IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-02842-WYD-CBS

TRUSTEES OF THE SPRINGS TRANSIT COMPANY
EMPLOYEE'S RETIREMENT AND DISABILITY PLAN,
    Plaintiff,
v.

CITY OF COLORADO SPRINGS, a Colorado municipal
corporation and home rule city;
FIRSTGROUP AMERICA, INC., a Delaware corporation; and
FIRST TRANSIT, INC., a Delaware corporation,
    Defendants.

---

## ORDER ON MOTION TO STAY DISCOVERY
---

Magistrate Judge Shaffer

    THIS MATTER comes before the Court on Defendant City of Colorado Springs' (the "City") Motion to Stay Discovery and All Proceedings Pending Determination of the City and Trustee Motions to Remand (doc. # 28), filed on February 19, 2010. I heard oral argument on the pending motion to stay on March 1, 2010. The court has carefully considered the parties' briefs and attached exhibits, the oral presentations of counsel, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the motion to stay discovery is granted.

### FACTUAL BACKGROUND

    This case was originally filed in the District Court for El Paso County, Colorado on November 3, 2009. Plaintiff Trustees of the Springs Transit Company Employee's Retirement and Disability Plan's (the "Trustees') Verified Complaint seeks declaratory and injunctive relief

relating to pension benefits established under the Springs Transit Company Employee's Retirement and Disability Plan, a defined pension benefit plan. The Verified Complaint alleges that the Retirement and Disability Plan is currently underfunded. Under the terms of the City's Service Contract with Defendant First Transit, Inc., the current contractor for bus service, if the bus contract is terminated and no subsequent contractor agrees to assume sponsorship of the Retirement and Disability Plan, the "City shall assume sponsorship of the pension plan." *See* Verified Complaint, at ¶ 17. There is some question whether the Taxpayers' Bill of Rights ("TABOR") incorporated in the Colorado Constitution as Article 10, § 20(4)(4), would preclude the City from making continued contributions to the Retirement and Disability Plan if the City assumed sponsorship under § 7.31(i) of the Service Contract. Accordingly, the First Claim for Relief requests a declaratory judgment that either:

> (i) the City may not lawfully assume sponsorship of the Plan under TABOR, and therefore, First Transit is required to continue as sponsor of the Plan; or (ii) TABOR does not preclude the City from assuming sponsorship of the Plan as provided in § 7.31(i) of the Service Contract, and therefore, upon doing so, the City shall be required to continue as sponsor of the Plan and will be responsible for making required contributions to the Plan and paying all benefits promised under the Plan without reduction or offset.

*Id.* at ¶ 30. The Verified Complaint also seeks, in the Second Claim, a temporary restraining order and preliminary injunction enjoining First Transit from transferring sponsorship of the Retirement and Disability Plan to the City, without approval of the court, pending the requested declaratory judgment. *Id.* at ¶ 35.

On or about November 24, 2009, the City filed a counterclaim arguing that it is precluded from being the Retirement and Disability Plan's sponsor under the terms of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1002(16)(b) and 1362. According to

the City, "§ 1362 sets out liability for termination of underfunded single-employer plans under a distress termination or termination by a corporation" and "[t]he financial liability of First Transit under ERISA are liabilities placed on First Transit as plan sponsor under federal law." *See* City's Counterclaim for Declaratory Judgment, at ¶¶ 16 and 17. The City further contends that "[u]nder the Colorado Constitution, Article X, Section 20 (State TABOR), and City Charter 7-90(d) (City TABOR) any multi-year direct or indirect debt or other financial obligation whatsoever without funds appropriated is unlawful." *Id.* at ¶ 19. Accordingly, the City's counterclaim seeks a declaration that First Transit is solely responsible for making contributions to the Retirement and Disability Plan.

On December 4, 2009, First Transit filed a Notice of Removal (doc. # 1), pursuant to 28 U.S.C. § 1441(b), suggesting that the "relief that the Plan Trustees and the City seek is available under ERISA, and is inherently federal in nature." *See* Notice of Removal, at 3. According to First Transit,

> As courts have reasoned, ERISA's provisions require that "employers" within the meaning of ERISA meet certain minimum contribution and funding obligations with respect to pension plans. What the Plan Trustees seek in the state-court action is a determination that - due to an allegedly conflicting state law - the City may not act as an "employer" required to make contributions under ERISA, and that, instead, First Transit must be considered the "employer" required to make such contributions to the pension plan. But ERISA provides the *exclusive* remedial scheme (including equitable relief in the form of declaratory judgments) for enforcement of obligations to make minimum pension plan contributions.

*Id.* at 4. First Transit argues that the City's counterclaim "by its own terms, seeks a declaration of rights and obligations under federal law," and "[t]herefore, the City's claim against First Transit is removable on its face." While First Transit contends that the Trustees' claim also arises under federal law,

3

> [e]ven if it were not, however, this Court would have jurisdiction over the Plan Trustees' claim under 28 U.S.C. § 1367, because the Plan Trustees' claim is so related to the City's claim that the claims form part of the same case or controversy under Article III of the United States Constitution.

*Id.* at 3. First Transit insists that the Trustees have asserted a claim that "fundamentally relates to an ERISA-governed plan, seeks to define ERISA-governed rights and obligations under that plan, and requests a remedy that is exclusively available under ERISA's civil enforcement provisions." *Id.,* at 3. In the same Notice of Removal, First Transit insists that the City is a nominal defendant in this action whose interests are completely aligned with the Trustees' interests as both of those parties seek to assign liability for future Plan contributions to First Transit. Accordingly, First Transit takes the position that the City's consent to removal is not required. *Id.* at 18.

Plaintiff filed a Motion to Remand (doc. # 9) on January 4, 2010, citing First Transit's failure to obtain Defendant City of Colorado Springs consent to removal as required by 28 U.S.C. § 1441(a).[1] *See, e.g., McEntire v. Kmart Corp.*, 2010 WL 553443, *4 (D.N.M. 2010) (citing Tenth Circuit precedents holding that where there are multiple defendants in the subject action, all defendants served at the time of filing must join in the notice of removal). The Trustees filed a supplemental Motion to Remand for Lack of Subject Matter Jurisdiction (doc. # 27) on February 10, 2010. In this Motion, Plaintiff takes the position that the action must be remanded back to state court because the Trustees' claims are neither completely preempted nor conflict preempted under ERISA. *See* Plaintiff's Motion to Remand for Lack of Subject Matter Jurisdiction, at 5. According to the Trustees, this declaratory action was brought "to determine

---

[1]The City echoed this argument in its Response to Plaintiff's Motion to Remand (doc. # 18), filed on January 22, 2010.

whether Colorado law is violated by the City's assumption of the duty to fund the Springs Transit Pension Plan benefit liabilities from First Transit." *Id.* Plaintiff then reasons that "[b]ecause the Trustees' claim does not arise from the Springs Transit Pension Plan document or the related collective bargaining agreement, the claim is not based solely on legal duties created by ERISA or the terms of any ERISA plan," and is therefore is not completely preempted by ERISA. *Id.* As for the issue of conflict preemption under ERISA, Plaintiff maintains that its TABOR claim does not have any effect on the primary administrative functions of the Springs Transit Pension Plan and does not affect the relations between First Transit, the Retirement and Disability Plan, or the Plan's fiduciaries and beneficiaries. *Id.* at 10. The City's Motion to Remand (doc. # 14), filed on January 22, 2010, similarly contends that the Trustees' Complaint asserts questions of state contract and Colorado constitutional law which do not implicate federal court jurisdiction and are not preempted by ERISA.

On March 12, 2010, First Transit filed a consolidated 34-page Response to Plaintiff Plan Trustees' and Co-Defendant City's Motions to Remand (doc. # 40). First Transit's Response recounts at length the "relevant facts" surrounding the parties' disputes and incorporates by reference many of the underlying documents attached as exhibits to First Transit's Notice of Removal. In addressing the issue of preemption, First Transit suggests that

> At the end of the day, what the Plan Trustees and the City seek in this action is a declaration regarding who is responsible for making minimum pension plan contributions as required by ERISA Section 302, 29 U.S.C. § 1082. But ERISA provides the *exclusive* remedial scheme to enforce obligations to make minimum pension plan contributions . . . and the Plan Trustees' and the City's claims therefore are completely preempted by ERISA.

*See* First Transit's Response to Motions to Remand, at 14 (emphasis in original). As First Transit construes the current posture of the case,

5

> [T]he Court's task in determining its own jurisdiction is not to determine the merits under Rule 56; no discovery has even occurred yet. Instead, the Court's task is to analyze the nature of the claim and determine whether the claim does or does not arise under federal law. Thus, the proper question is simply whether the claim asserted by the Plan Trustees does or does not fall within ERISA's civil enforcement scheme.

*Id.*, at 17. First Transit's Response does not suggest that discovery to any degree is necessary to resolve this threshold issue. To the contrary, First Transit maintains that the documentary record can only be interpreted to support removal.

Against the backdrop of these competing positions on remand, First Transit served on February 8, 2010, its First Set of Discovery Requests to Co-Defendant City, consisting of 11 requests for admission, 18 interrogatories, and 15 requests for production, all of which specifically encompass electronically stored information. On February 18, 2010, the City filed the instant Motion to Stay Discovery.[2] The City's motion argues that "this civil action involves issues of law, and the discovery sought by First Transit is not relevant and unnecessary to the determination of those issues." *See* City's Motion to Stay Discovery and All Proceedings, at ¶ 7. The motion also summarily suggests that "[i]t would be unduly burdensome to require the City to expend time, funds, and personnel in answering the extensive First Transit discovery requests," and then points out (without elaboration) that "[t]here is no equivalent Colorado Rules of Civil Procedure corresponding with Fed.R.Civ.P. 34 regarding electronically stored information."[3] *Id.* at ¶¶ 5 and 6.

---

[2] In its D.C.COLO.LCivR 7.1A certification, the City advised that "Counsel for Trustees concurs in the requested relief."

[3] The logic of this argument is difficult to perceive. Rule 34 of the Federal Rules of Civil Procedure and Rule 34 of the Colorado Rules of Civil Procedure are virtually identical, as both permit the discovery of relevant materials, including data compilations. *Cf. Cameron v. District*

6

First Transit's Response to the City's Motion to Stay Discovery and All Proceedings argues that a stay would be futile because, in First Transit's view, the City's and the Trustees' challenge to subject matter jurisdiction will fail. The Response also suggests that a stay is unwarranted because First Transit and "the Plan Trustees have an interest in expeditiously litigating this case," and because "the City will not experience any undue burden if required to proceed with discovery at this point." As a compromise, First Transit proposes that discovery proceed on a limited basis while the Motions to Remand are pending. To that end, First Transit contemplates serving five requests for admission, five interrogatories and five requests for production on each of the opposing parties, and taking four depositions limited to no more than four hours each. More specifically, First Transit seeks discovery, including electronically stored information, "concerning the process of negotiating Section 7.31 of the Service Contract," and "the November 5, 2007 letter from the Mayor of the City of Colorado Springs to Dan Francis, Vice President & Chief Steward of the Union at the time" and "the May 2006 Request for Proposal that was sent from the City to various private transportation companies,"as well as "discovery concerning payments the City has made to the Plan in the past." *See* First Transit's Response, at 11.

---

*Court*, 565 P.2d 925, 928 (Colo. 1977) (noting that Colorado's discovery rules are "patterned after the Federal Rules of Civil Procedure"). *See also Williams v. Sprint/United Management Co.*, 230 F.R.D. 640, 648 (D. Kan. 2005) (holding that the reference to "data compilation" in Rule 34 is broadly descriptive of any means of storing information, including electronic computer storage). The federal and Colorado versions of Rule 26(b) similarly allow the court to limit discovery based upon a proportionality assessment. Ironically, notwithstanding its claims of undue burden, the City seems disinclined to take advantage of Fed. R. Civ. P. 26(b)(2)(b), which states that a party "need not produce discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." There is no comparable provision in the Colorado Rules of Civil Procedure.

**ANALYSIS**

It cannot be gainsaid that the court has considerable discretion over the timing of discovery. *See, e.g., United States v. Evans & Associates Construction Co., Inc.*, 839 F.2d 656, 660 (10th Cir. 1988); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979). In that regard, this court is empowered under Fed. R. Civ. P. 26(c) to stay an action while a dispositive motion is pending. *String Cheese Incident, LLC v. Stylus Shows, Inc.*, 2006 WL 894955, at *2 (D. Colo. 2006). *See also Hachette Distribution, Inc. v. Hudson County News*, 136 F.R.D. 356, 358 (E.D.N.Y. 1991) ("the federal district courts have discretion to impose a stay of discovery pending the determination of dispositive motions by the issuance of a protective order"). Under Rule 26(c), a court may, for good cause, enter an order "forbidding discovery" in order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense."

As a threshold matter, the court must acknowledge the procedural posture of the City's Motion to Stay Discovery and All Proceedings. Local Rule 7.1C provides that "a motion involving a contested issue of law shall state under which rule or statute it is filed and be supported by a recitation of legal authority incorporated in that motion." *See* D.C. COLO LCivR 7.1C. The City's initial Motion to Stay Discovery and All Proceedings does not comply with this requirement. In the absence of any specific citations, I will presume that the Motion has been brought pursuant to Rule 26(c). The City summarily asserts that "[i]t would be unduly burdensome to require the City to expend time, funds, and personnel in answering the extensive First Transit discovery requests." However, a party seeking a protective order under Rule 26(c) has the burden of demonstrating good cause, *see, e.g., Semsroth v. City of Wichita*, 239 F. R.D. 630, 633 (D. Kan. 2006), and cannot sustain that burden simply by offering conclusory

8

statements. *See Tolbert-Smith v. Bodman*, 253 F.R.D. 2, 4, (D.D.C. 2008); *Exum v. United States Olympic Committee*, 209 F.R.D. 201, 206 (D. Colo. 2002). "A party moving for a protective order must make a 'particular and specific demonstration of fact' in support of its request." *Aikens v. Deluxe Financial Services, Inc.*, 217 F.R.D. 533, 536-37 (D. Kan. 2003) (holding that where a motion for protective order is based on a claim of undue expense or burden, the moving party must submit affidavits or other detailed explanations as to the nature and extent of the burden or expense). *Cf. Trinos v. Quality Staffing Services Corp.*, 250 F.R.D. 696, 698 (S.D. Fla. 2008) ("courts should only limit discovery 'based on *evidence* of the burden involved, not on a mere recitation that the discovery request is unduly burdensome'") (emphasis in original). The City's Motion does not set forth, either directly or by affidavit, the factual basis for a claim of undue burden. Under different circumstances, the court might be inclined to deny the Motion to Stay Discovery and All Proceedings on that basis alone.

However, the City may not be required to make a particularized showing under Rule 26(c) if First Transit's discovery requests are facially objectionable. *See International Society for Krishna Consciousness, Inc. v. Lee*, 1985 WL 315, *10 (S.D.N.Y. 1985) (holding that where many of the discovery requests at issue were egregiously overbroad and burdensome on their face, a specific showing of undue burden was not required). First Transit's First Set of Discovery Requests are susceptible to such a challenge. For example, those Discovery Requests incorporate the following definition:

> As used herein, "relate" or "relating to", when used with respect to a document, agreement, subject or fact, means reflecting, showing, embodying, containing, evidencing, concerning, pertaining to, regarding, reciting, recording, supporting, refuting or referring to such matter.

It is difficult to imagine what documents or information would not be swept up in this definition.

9

*Cf. In re Urethane Antitrust Litigation*, 2008 WL 110896, *1(D. Kan. 2008) (holding that a discovery request is overly broad and unduly burdensome on its face if it uses an "omnibus term" such as 'relating to,'" because "such broad language 'make[s] arduous the task of deciding which of numerous documents may conceivably fall within its scope'"); *Roda Drilling Co. v. Siegal*, 2008 WL 2234652, *2 (N.D. Okla.) (finding that "many of the parties' requests for production of documents are overbroad, as they request 'all documents' relating to or concerning a subject"), *reconsideration denied in part*, 2008 WL 3892067 (N.D. Okla. 2008); *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 665 (D. Kan. 1999) (held that the challenged discovery request was facially overbroad due to its use of the "omnibus phrase 'relating to'"); *Parsons v. Jefferson-Pilot Corp.*, 141 F.R.d. 408, 412 (M.D.N.C. 1992) ("broad and undirected requests for all documents which relate in any way to the complaint are regularly stricken as too ambiguous").

As further example, First Transit's Request for Production No. 5 is patently overbroad and burdensome, to the extent it seeks "all documents, electronically stored information, or tangible things likely to contain discoverable information relevant to this action, regardless of whether you may use such documents, electronically stored information, or tangible things to support your claims or defenses." *Cf. Hilt v. SFC Inc.*, 170 F.R.D. 182, 187 (D. Kan. 1997) (holding that "[t]he discovery rules provide no absolute, unharnessed right to find out every conceivable, relevant fact that opposing litigants know"). Given the virtually unlimited scope of Request No. 5, First Transit's Request for Production No. 11 could only be described as "piling on" to the extent that it asks for:

> all documents, electronically stored information, or tangible things pertaining to Plan contributions, Plan funding, and/or Plan sponsorship including, but not

10

>limited to, meeting-related materials, internal correspondence, correspondence between yourself and the Plan Trustees, correspondence between yourself and First Transit, correspondence between yourself and the Union, correspondence between yourself and any actuary, correspondence between yourself and any governmental agency, and correspondence between yourself and any other third party, contracts, agreements, actuarial analyses, and records of such contributions.[4]

*See also Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 358 (D. Md. 2008) (noting that "kneejerk discovery requests served without consideration of cost or burden on the responding party" represent "one of the most prevalent of all discovery abuses"). If the relief sought in the City's Motion to Stay Discovery and All Proceedings was measured against the burdens inherent in First Transit's First Set of Discovery Requests, the court would have no reluctance in granting the Motion, even in the absence of a particularized and specific demonstration of fact under Rule 26(c).

It bears repeating that the City filed its Motion to Stay Discovery and All Proceedings in the wake of First Transit's First Set of Discovery Requests. However, First Transit's Response brief proposed to narrow substantially the scope of its discovery. The City's Reply (doc. # 46) does not address the substance or implications of those more limited discovery requests, but simply argues in passing that "[t]he request for limited discovery is improper in a response brief." More particularly, the Reply does not discuss whether, or to what extent, the more limited discovery undercuts the City's earlier claim of "undue burden." In that respect, the City's briefing is still deficient under Rule 26(c).

Deciding the instant motion on the basis of these enumerated shortcomings or on a strict

---

[4]For purposes of First Transit's First Set of Discovery Requests, "you," "your," or "yourself" are defined to encompass "the City of Colorado Springs, and its affiliates, predecessors, successors, representatives, agents, and assigns."

11

application of D.C. COLO. LCivR 7.1C, however, would do little to "secure the just, speedy, and inexpensive determination" of this action. *See* Fed. R. Civ. P. 1. In this case, the interests of judicial economy are advanced by addressing the merits of the parties' respective positions. After carefully considering the current posture of the litigation, the specific discovery sought by First Transit, and the arguments advanced by the parties, the court finds good cause to stay discovery pending a ruling on the motions to remand.

Certainly, there is no reason to believe that the Trustees' and City's motions to remand have been interposed for an improper purpose, such as to harass or cause unnecessary delay. The court must also acknowledge the potentially dispositive effect of the pending motions for remand. *See First Union Mortgage Corp. v. Smith*, 229 F.3d 992, 996 (10th Cir. 2000) (holding that a remand order "is a final decision in the sense that it is 'dispositive of all the claims and defenses in the case as it banishes the entire case from the federal court'"). *See also Nankivil v. Lockheed Martin Corp.*, 216 F.R.D. 689, 692 (M.D. Fla. 2003) (citing various cases in which the court stayed discovery pending rulings on motions that would dispose of the entire case). First Transit counters by insisting that the motion for stay should be denied because the motions for remand have no merit and are certain to fail. That is not an legal argument, so much as an expression of faith in one's position.

Alternatively, First Transit argues for a more carefully defined stay and limited discovery. In the appropriate case, phased or bifurcated discovery can promote fairness and efficiency, and provide an effective tool to control litigation costs and expedite the resolution of a case. *Cf. In re Rail Freight Fuel Surcharge Antitrust Litigation*, 258 F.R.D. 167, 172 (D.D.C. 2009) (after noting that discovery is not to be used as a weapon, held that courts should resolve

motions to bifurcate discovery by balancing "the need to promote effective case management, the need to prevent potential abuse, and the need to protect the rights of all parties"). Bifurcated discovery also has the potential for creating its own set of challenges and discovery disputes, which may adversely affect the goal of judicial efficiency. *Cf. Arocho v. Nafzinger*, 2008 WL 5101701, *1 (D. Colo. 2008) ("[P]artial stays or bifurcated discovery have proven to be an inefficient process, leading to confusion of the parties about the type of discovery permitted during the stay and, consequently, discovery disputes which cannot be resolved without court assistance."). Here, First Transit has not demonstrated how even limited discovery would materially assist the district court in deciding the issue of remand. Without some further showing by First Transit, the court sees little to be gained by phasing the discovery process or requiring the City to undertake successive searches for electronically stored information.

Finally, the court cannot completely disregard the City's previous representations regarding the burdens of electronic discovery in this case. First Transit's Notice of Removal alleges that "[i]n 1981, the City undertook certain responsibilities for continuation of the Plan's benefits through an agreement between the City and Colorado Transit." *See* Notice of Removal, at 6. During the Fed. R. Civ. P. 16 scheduling conference, counsel for the City advised the court that if the relevant time period for discovery reaches back to 1981, many of the individuals with pertinent knowledge are no longer employed by the City and, in some instances, have unknown addresses. The City's counsel also indicated that since 1981, the City has changed computer systems and no longer has the software to readily retrieve much of that archival material.

While weighing the moving party's burden, a court must also balance the possibility of prejudice to the opposing party if the stay is granted. *See McCabe v. Foley*, 233 F.R.D. 683, 687

(M.D. Fla. 2006) ("In deciding whether to stay discovery pending resolution of a pending motion, the Court inevitably must balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery."). *Cf. Anti-Monopoly Inc. v. Hasbro Inc.*, 1996 WL 101277, *2 (S.D.N.Y. 1996) (finding that "good cause" for a stay of discovery may be shown where the moving party has filed a dispositive motion, the requested stay is of short duration, and the opposing party will not be prejudiced by the stay). Notably, First Transit does not suggest that it would be prejudiced if a stay of discovery was imposed during the pendency of the motions to remand.[5] *Cf. In re First Constitution Shareholders Litigation*, 145 F.R.D. 291, 293 (D. Conn. 1991) (granting defendants' motion for a stay of discovery after finding there would be no prejudice to plaintiff, "which 'will have ample time [if the motion to dismiss is denied] to take discovery on the merits of its claims'").

Moreover, First Transit has not argued that discovery is necessary to gather facts germane to the remand issue. *Cf. Chavous v. District of Columbia Financial Responsibility and Management Assistance Authority*, 201 F.R.D. 1, 3 (D. D.C. 2001) (while recognizing that "discovery should precede consideration of dispositive motions when the facts sought to be discovered are relevant to consideration of the particular motion at hand," the court stayed discovery pending a determination of the parties' dispositive motions after noting that "plaintiffs have never suggested that they need the discovery they now seek in order to oppose the pending motions to dismiss"). Rather, First Transit simply wishes to proceed "expeditiously with this

---

[5]There is no indication in the record that any of the information sought through First Transit's "limited discovery" would be lost or unavailable if discovery responses were delayed pending a ruling on the motions to remand.

14

lawsuit."[6]  While I can appreciate the desire for a prompt resolution of this action, that consideration, standing alone, does not override the court's independent obligation to manage the discovery process in light of the burden or expense of the proposed discovery, its likely benefit, and the importance of the discovery in resolving the issues.  *See* Fed. R. Civ. P. 26(b)(2)(C)(iii).

The latter factors are particularly relevant in deciding the instant motion to stay.  First Transit's Notice of Removal provides a "Statement of Relevant Jurisdictional Facts."  The Trustees and the City do not appear to take issue with any of the exhibits underlying First Transit's "Statement," but rather challenge the legal significance of those "relevant jurisdictional facts." In that respect, much of the limited discovery that First Transit seeks to obtain immediately seems to have little, if any, bearing on the legal issues currently before the district court.  For example, First Transit's proposed Request for Admission No. 1, Interrogatory No. 1 and Request for Production No. 1 are directed to the 2006 Service Contract (the "Service Contract") between the City and Laidlaw Transit Services, Inc.  The 2006 Service Contract was attached as Exhibit 2 to the Trustees' Complaint and appended to First Transit's Notice of Removal as Exhibit A.  In opposing the motions to remand, First Transit argues that "ERISA preemption does not turn on the status of the Service Contract as a 'Plan Document' or the status of the City as an 'employer'" and, alternatively, "even if ERISA preemption turned on whether the Service Contract is a Plan document (which it does not), the Plan Trustees' arguments still fail because the Contract is a Plan document."  *See* First Transit's Response to Motion to Remand, at 17 and 18.

---

[6] I note that the Trustees of the Springs Transit Company Employee's Retirement and Disability Plan, the party who initiated this action, have not opposed the City's request for stay of discovery.

In view of those arguments, this court fails to see why disposition of the pending motions for remand requires the "expeditious" identification of "each person who has been involved in negotiating the terms and conditions of Section 7.31 of the Service Contract (including its amendments)" or production of "all documents or electronically stored information generated as part of the process of negotiating Section 7.31 of the Service Contract." *See* First Transit's proposed Interrogatory No. 1 and proposed Request for Production No. 1 to the City, set forth in footnote 2 of First Transit's Response to City's Motion to Stay Discovery and All Proceedings. I fail to see, and First Transit has not persuasively explained, how discovery concerning the "negotiation" of Section 7.31of the Service Contract would materially impact the jurisdictional issues raised in the parties' briefs on the remand issue.

Similarly, in its Response to the Motions to Remand, First Transit quotes from a November 5, 2007, letter in which the Mayor of the City of Colorado Springs writes: "The City of Colorado Springs ha[s] accepted the responsibility to fund the poorly managed transit worker pension program. . . . The City's acceptance of the plan has resulted in an additional expenditure of taxpayer dollars of approximately $700,000 for each of the past three years with roughly the same requirement for the next three." *See* First Transit's Response to the Motions to Remand, at 8 and Exhibit A attached thereto. The City's Reply brief does not appear to challenge the existence or contents of the November 5, 2007 letter. Nevertheless, First Transit claims the need to expeditiously learn the identity of "each person who was involved in drafting the November 5, 2007 letter" and to receive "all drafts of the November 5, 2007 letter." *See* First Transit's proposed Interrogatory No. 3 and proposed Request for Production No. 4 to the City, set forth in footnote 2 of First Transit's Response to City's Motion to Stay Discovery and All Proceedings.

16

None of this information is necessary to address the legal significance of the November 5, 2007 letter in the context of the motions to remand.[7] *Cf. Moldea v. New York Times Co.*, 137 F.R.D. 1, 2 (D.D.C. 1990) (granting a motion to stay after concluding that the pending motion for summary judgment asked the court to consider the legal significance of the words and phrases actually set forth in the challenged document which would not require "scrutiny beyond the challenged publication").

Finally, First Transit wants the City to "identify each person who was involved in drafting the [May 11, 2006] Request for Proposal" and to "[p]roduce all drafts of the May 2006 Request for Proposal . . . as well as any correspondence generated or received by you as a result of sending the May 2006 Request for Proposal."[8] *See* First Transit's proposed Interrogatory No. 4 and proposed Request for Production No. 54 to the City, set forth in footnote 2 of First Transit's Response to City's Motion to Stay Discovery and All Proceedings. In opposing remand, First Transit quotes from the May 2006 Request for Proposal, in which "the City stated unambiguously: '**The City is responsible for the unfunded liability of the pension program that currently exists.**'" *See* First Transit's Response to Motions to Remand, at 7 (emphasis in original). First Transit apparently wishes to obtain on an expedited basis discovery concerning a document that it maintains is unambiguous. Neither the City's nor the Trustees' briefs have

---

[7]First Transit can hardly suggest that it has an immediate need for information relating to the November 5, 2007 letter, given First Transit's position that "[t]he Mayor's letter is particularly telling - an *unequivocal* assurance from the City's senior-most official directly to the union and its members (the plan participants) that the City was assuming liability for the unfunded pension plan liability." *See* First Transit's Response to Motions to Remand, at fn. 9 (emphasis added).

[8]The May 2006 Request for Proposal is attached as Exhibit F to the Notice of Removal.

disputed the contents of the May 2006 Request for Proposal.

While I have no reason to address the ultimate merits of the parties' respective positions on the question of remand, I find that the interests of judicial economy would not be advanced by allowing discovery pending a ruling on the motions to remand. Accordingly, for the foregoing reasons, Defendant City of Colorado Springs' Motion to Stay Discovery and All Proceedings Pending Determination of the City and Trustee Motion to Remand (doc. # 28) is GRANTED.

DATED this 11th day of May, 2010.

BY THE COURT:

s/ Craig B. Shaffer
United States Magistrate Judge